UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

CLAUDE MELVIN WELCH )
)
V. ) NO. 2:13-CV-147
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. Plaintiff's applications for disability insurance benefits and supplemental security income under the Social Security Act were denied following a hearing before and Administrative Law Judge ["ALJ"]. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14] while the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 16].

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues

differently, the Commissioner's decision must stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

Plaintiff is a younger individual. He has a limited education. He cannot return to any past relevant work.

Plaintiff's medical history is mainly from sources related to his claims for disability. The medical evidence is summarized in the defendant's brief as follows:

> Dr. Marianne E. Filka examined Plaintiff in December 2008 and described his intellectual functioning as average (Tr. 241, 396, 403). Dr. Filka observed Plaintiff had a normal gait and full range of motion in his shoulders (Tr. 241).
> A physician at Lakeshore Mental Health Center (whose signature is illegible) stated in February 2009 that Plaintiff's intellectual functioning was average (Tr. 255). Though Plaintiff admitted using drugs and his urine drug screen showed cocaine (Tr. 254), the physician also observed Plaintiff's speech was normal, memory was intact, thinking was concrete, and attention span was average (Tr. 255).
> Connie Sue Robinette, an advanced practice nurse at Frontier Health, examined Plaintiff in June 2009 and observed his intelligence appeared average (Tr. 295). She also observed his speech had a normal rate and rhythm; concentration was good; insight, judgment, and memory were intact; abstraction ability was within normal limits; and thoughts were logical, coherent, and goal-directed (Tr. 295). Plaintiff had no abnormal movements or postures (Tr. 295).
> Beth Ballard, a senior psychological examiner, examined Plaintiff and administered intelligence testing in August 2009 (Tr. 321). Plaintiff stated he had not used illegal drugs in years (Tr. 317). Plaintiff reported drinking a twelve pack of beer one day earlier (Tr. 316). Ms. Ballard noted he smelled "strongly" of alcohol (Tr. 318). Intelligence testing yielded a Verbal IQ of 64, Performance IQ of 62, and Full Scale IQ of 65 (Tr. 319). Ms. Ballard opined Plaintiff may have "more than a slight limitation" in several mental areas but could still function satisfactorily in each area (Tr. 322-24).
> Dr. Charles E. Gaines, a psychiatrist, examined Plaintiff in November 2010 and did not diagnose him with mental retardation (Tr. 593). Dr. Gaines observed

2

Plaintiff answered questions logically and participated well in treatment discussions and decisions (Tr. 593). According to Dr. Gaines, Plaintiff also made several "negativistic statements," including that "his presentation to this office for treatment might prevent him from working, such as if this would conflict with employment" (Tr. 592).

Dr. Samuel Breeding, a physician, examined Plaintiff in April 2011 and estimated Plaintiff's intelligence as average (Tr. 608). After observing that Plaintiff's gait and station appeared normal, knees had no swelling and only "mild" tenderness, and range of motion apart from his lumbar spine appeared normal (Tr. 608), Dr. Breeding stated he had no objective evidence for placing physical restrictions on Plaintiff (Tr. 609).

Ms. Ballard examined Plaintiff again in March 2011 (Tr. 601). Ms. Ballard observed his speech was logical, coherent, and goal directed (Tr. 603). Ms. Ballard also observed that Plaintiff's ability to perform activities of daily living was adequate (Tr. 604). Based on previous testing, she opined he was functioning in the mild range of mental retardation (Tr. 603, 605). Ms. Ballard and Diane L. Whitehead, a psychologist, opined Plaintiff could understand and remember simple instructions but that his intellectual functioning caused marked limitations in understanding and remembering detailed instructions, moderate limitations in maintaining age-appropriate social behavior, neatness, and cleanliness, and mild limitations in responding appropriately to changes, being aware of normal hazards, taking precautions, traveling unaccompanied to unfamiliar places, and using public transportation (Tr. 605).

William T. Stanley, a senior psychological examiner, examined Plaintiff in April 2012 (Tr. 664). Plaintiff denied using street drugs (Tr. 664). Mr. Stanley stated Plaintiff had awkward fine and gross motor movements, including shaky hands and a slow, shuffling, and limping gait (Tr. 664). Intelligence testing yielded a Verbal Comprehension Index of 72, Perceptual Reasoning Index of 67, and Full Scale IQ of 66 (Tr. 667). Mr. Stanley opined Plaintiff had numerous "moderate" or "marked" mental limitations (Tr. 670-72).

Plaintiff reported he does not drive because he lost his license in the 1980s (Tr. 206, 608). He also stated in October 2010 that he was on probation for a DUI (Tr. 400, 559). In the Function Report that he submitted to the agency, Plaintiff reported he can shop for groceries and pay bills, count change, handle a savings account, and use a checkbook and money orders (Tr. 206). He also reported he does not get along with his family and believes his neighbors are too noisy, but does socialize with his girlfriend (Tr. 208).

Dr. George T. Davis, a psychologist, reviewed the available evidence in March 2009 and determined Plaintiff's impairments caused only "mild" or "moderate" limitations (Tr. 268). Dr. Davis also determined Plaintiff could complete routine activities of daily living independently and effectively on a regular basis (Tr. 270). Dr. Davis also opined Plaintiff could understand and remember simple, detailed, and complex tasks (Tr. 274).

Dr. Robert E. Paul, a psychologist, reviewed the evidence in April 2011 and

3

observed Plaintiff's adaptive functioning and work history was more consistent with borderline intellectual functioning, not mild mental retardation (Tr. 624). Dr. Thomas E. Schacht, a psychologist, reviewed the evidence and testified in October 2009 that Plaintiff's impairments did not meet or equal a listed impairment (Tr. 53).

[Doc. 17, pgs. 2-5].

Plaintiff also submitted school records, which are also summarized by the defendant as follows:

> Plaintiff reportedly kicked his principal and hit a teacher on his first day of school (Tr. 602). He was expelled, returned one year later, and was put in a "slow learner class" because of his earlier behavior (Tr. 602). Plaintiff also reported that the highest grade he completed was fifth (Tr. 175) and that a court emancipated him and "told me to quit school to go to work" when he was twelve (i.e., in 1979) (Tr. 151, 664). Plaintiff also reported he was "kicked out" of school due to problems with other students (Tr. 317).
> Plaintiff's school records show he attended school at least until seventh grade (i.e., until the 1980-81 school year), when he was absent for 59 days out of 180 (Tr. 538). Plaintiff mainly received marks for "outstanding" or "satisfactory" progress from first to fifth grade (Tr. 539-43), though he had difficulty with arithmetic (Tr. 533) and functioned academically below grade level (Tr. 538-40, 553). In fourth grade, Plaintiff also received marks for "above average" performance (Tr. 540). In fifth grade, he received marks mostly for "above average" or "average" performance (Tr. 539). Plaintiff was absent more often when his grades declined in sixth and seventh grade (Tr. 538). Plaintiff's second grade teacher stated he was "capable" but did not listen attentively and had difficulty following oral directions (Tr. 544).

[Doc. 17, pg. 5].

At the administrative hearing on May 1, 2012, the ALJ called and took the testimony of Dr. Susan Bland, a medical expert. Dr. Bland had reviewed all of the plaintiff's medical records. She interpreted the findings for the ALJ. She noted that his back surgery in 1999 was successful and that he had no more documented problems with his back until 2008, when he fell. She noted that x-rays taken since then showed only mild degenerative changes. She particularly noted the benign observations of Dr. Breeding, including the fact that plaintiff was somewhat intoxicated at the time of that exam, having consumed 6 beers already that

4

day. Unfortunately for the plaintiff, this was his condition more often than not when appearing for medical or psychological evaluations. Based upon the medical record, Dr. Bland opined that from a physical standpoint, plaintiff could perform a reduced range of medium work, with lifting of 20 pounds frequently and 40 occasionally, with no limit on standing and walking, with no climbing ladder, and no continuous bending and stooping. (Tr. 417-420].

The ALJ then took the testimony of Ms. Donna Bardsley, a vocational expert ["VE']. He asked her to assume the plaintiff had the physical capacity described by Dr. Ballard and was limited to simple repetitive work, preferably with things rather than people. When asked whether jobs existed which such a person could perform, Ms. Bardsley identified the jobs of general laborers, kitchen helpers, hand packagers, sorters, assemblers, and inspectors. There were 5,670,000 in the national economy and 3,050 in the immediate region. (Tr. 423-424).

The ALJ found that the plaintiff had severe impairments of degenerative disc disease of the lumbar spine with a remote history of successful disc surgery; anxiety; and depression. He found that the plaintiff did not have impairments which met or equaled any listed impairment. He adopted the finding of the state agency psychologists that the plaintiff had mild limitations in activities of daily living and in maintaining social functioning and a moderate limitation in maintaining concentration, persistence and pace, with no episodes of decompensation. (Tr. 392).

The ALJ found that the plaintiff had the residual functional capacity ["RFC"] to perform less than a full range of medium work, with occasional lifting of 40 pounds and frequent lifting of 20 pounds. He found that the plaintiff could not climb, stoop or bend, but

5

had no limits on standing or walking. He found the plaintiff was limited to simple, repetitive work with things rather than people. (Tr. 393).

The ALJ recounted the plaintiff's medical history in great detail. In this regard, he frequently noted the times the medical personnel involved noted plaintiff's smelling of alcohol, or diagnoses of alcohol abuse. He also described how plaintiff returned to work after his successful back surgery, and worked without incident for many years (Tr. 394-402).

Giving the plaintiff the benefit of the doubt, the ALJ did not give great weight to the opinions of Drs. Filka and Breeding, whose examinations of the plaintiff found no physical limitations. He instead gave great weight to the opinion of Dr. Bland, the medical expert at the administrative hearing upon whose opinion the RFC finding was chiefly based. He did not state the weight given to William Stanley, the psychological examiner, but obviously discounted his opinion. The ALJ stated that Mr. Stanley's main objective appears to assert that the claimant's impairment(s) meets the criteria of Listing 12.05C, when, in fact, there is no evidence to support that the claimant has an intellectual impairment that meets the criteria..." of that listing. He then states "the claimant did not undergo this examination in an attempt to seek treatment for symptoms, but rather, through attorney referral and in connection with an effort to generate evidence for this current appeal." (Tr. 403).

The ALJ then described the evidence, pointing out the various treating sources and examiners who opined that the plaintiff had average intelligence, and noting that the plaintiff's school records did not indicate mental retardation, but indicated he was "capable, but had a habit of not listening very attentively...". He noted that Mr. Stanley described physical abnormalities such as a shuffling gait and limp mentioned by no other source. He

6

reiterated his reasons for finding Dr. Bland most accurately described the plaintiff's RFC. (Tr. 403-404).

He found that although plaintiff could not return to his past relevant work, there were, based upon the testimony of the vocational expert, a significant number of jobs which the plaintiff could perform. Accordingly, he was found to be not disabled.

Plaintiff's argument is that the ALJ erred in not finding that he met the requirements of Listing 12.05(C). That listing is with respect to "intellectual disability." It states that "intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when... [a claimant proves] C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *20 CFR Pt. 404, Subpt. P, App. 1*. The listing was recently changed in August 2013 to substitute the present term of "intellectual disability" for the more archaic and disfavored term of "mental retardation."

Thus, to meet the listing, a person must have (1) significantly subaverage general intellectual functioning, (2) deficits in adaptive functioning, (3) present before age 22, (4) an IQ score between 60 and 70, and (5) another physical or mental impairment imposing an additional and significant work-related limitation of function. Although the onset of the condition must be shown to have occurred before age 22, the subaverage intellectual functioning and deficits in adaptive functioning *must also be proven to exist in the present.*

7

If there is substantial evidence that an individual does not have subaverage intellectual functioning and deficits in intellectual functioning at present, they cannot meet this listing. This case is very similar to the unreported Sixth Circuit decision in *Justice v. Commissioner of Soc. Security* 515 Fed. Appx. 583, 2013 WL 645957 (6th Cir. 2013).

In *Justice*, the plaintiff had a verbal IQ of 70 and a full scale IQ of 69. His reading, writing, comprehension and math skills placed him between the first and third percentile. *Id.,* at 584. The ALJ found that plaintiff did not meet the above mentioned requirements because plaintiff's "'actual level of intellectual functioning is inconsistent with the requirements of § 12.05C' because of his work history and ability to 'adequately manage most activities of daily living.' The ALJ credited the diagnosis of 'borderline intellectual functioning' and rejected the more severe diagnosis of 'mild mental retardation.'" *Id.*, at 586. Thus, even though the plaintiff met the IQ requirement, and performed poorly in school, the ALJ found that he did not meet the requirement of deficits in adaptive functioning. The Sixth Circuit agreed.

> The ALJ's findings provide substantial evidence for the conclusion that Justice did not display a deficit in adaptive functioning initially manifesting during the developmental period, based on the record evidence of Justice's work history and education, along with the medical reports. Justice has a lengthy work history...In addition, the medical reports credited by the ALJ support the less severe diagnosis of borderline intellectual functioning, rather than mental retardation, and indicate that Justice is able to adequately manage normal activities of daily living. This substantial evidence supports the ALJ's finding that Justice did not exhibit a deficit in adaptive functioning that was initially manifested during the developmental period.

*Id.*, at 587.

The plaintiff's elementary school records demonstrate a child with behavioral and truancy problems, but honestly do not describe what the pre-2013 CFR and earlier

8

generations described as mental retardation. In the previous report and recommendation, the Court pointed out the significant problems of arriving at trustworthy diagnoses posed by plaintiff showing up either inebriated or smelling strongly of alcohol at evaluations or for treatment. That situation is what it is, but one thing it is not is the fault of the Social Security Administration, but a regrettable consequence of plaintiff's behavior.

The Court finds that there is substantial evidence to support the ALJ's findings of the plaintiff's limitations, and that he does not meet Listing 12.05C. The Court also finds that his RFC finding and thus his question to the VE was supported by substantial evidence. Accordingly, there are a significant number of jobs which the plaintiff's can perform. Therefore, it is respectfully recommended that the plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the defendant Commissioner's Motion for Summary Judgment be GRANTED.[1]

Respectfully submitted,

s/ Dennis H. Inman
United States Magistrate Judge

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).